# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LABORERS' PENSION FUND and ) <br> JAMES S. JORGENSEN, Administrator ) <br> of the Fund, ) <br>     Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> W.R. WEIS COMPANY, INC., STONE ) <br> SYSTEMS, INC., and MICHIGAN ) <br> CORP., ) <br>     Defendants. ) | Case No. 13 C 6698 <br><br> Judge Joan B. Gottschall |

## MEMORANDUM OPINION AND ORDER

Plaintiff Laborers' Pension Fund and its administrator, James Jorgensen (collectively, "the Fund"), filed this action under the Employee Retirement Income Security Act ("ERISA"), as amended by the Multiemployer Pension Plan Amendment Acts of 1980 ("MPPAA"). The Fund seeks to collect liability incurred when defendant W.R. Weis, Inc. ("Weis") withdrew from the Fund. The Fund's motion for summary judgment is before the court. For the following reasons, the motion is granted.

### I. BACKGROUND

**A.    Local Rule 56.1**

Local Rule 56.1(a)(3) requires a party moving for summary judgment to submit "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to judgment as a matter of law." *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (citing L.R. 56.1(a)(3)). Under Local Rule 56.1(b)(3), the nonmoving party then must submit a "concise response" to each statement of fact, "including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other

supporting materials relied upon." L.R. 56.1(b)(3)(B).  The nonmoving party may also present a separate statement of additional facts that requires the denial of summary judgment.  *See* L.R. 56.1(b)(3)(C); *see also Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643-44 (7th Cir. 2008).

"When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by [Local Rule 56.1], those facts are deemed admitted for purposes of the [summary judgment] motion." *Cracco*, 559 F.3d at 632.  Weis did not response to the Fund's Rule 56.1 statement.  As the facts in the Fund's statement are supported by the record, they are deemed admitted.  The court also notes that to the extent that any additional facts in Weis' response to the motion for summary judgment differ from facts in the Fund's 56.1 statement, it will not consider those facts as Weis did not submit them in the format required by Local Rule 56.1.  This does not affect the result, as Weis concedes that the material facts as stated by the Fund are undisputed, and it appears that any discrepancies (such as dates) are merely scrivener's errors.  With that said, the court turns to the facts.

**B.     Facts**

The Fund is a non-profit, multiemployer pension plan.  Plaintiff James Jorgensen is the Fund's administrator.  Weis was bound by a collective bargaining agreement with the Laborers' International Union of North America, under which Weis was required to make contributions to the Fund on behalf of certain of its employees.  On or about September 20, 2012, Weis, through its attorney, terminated its agreement with the Union, effective December 9, 2012.  The Fund's Trustees determined that Weis effected a "complete withdrawal" from the Fund.  *See* 29 U.S.C. § 1383(b).  As a result of this withdrawal, Weis incurred withdrawal liability to the Fund.  *See* 29 U.S.C. § 1381(b).

The Fund sent Weis a letter dated December 18, 2012 ("Initial Notice and Demand") asserting that Weis owed withdrawal liability to the Fund and demanding payment. The Initial Notice and Demand estimated that Weis owed $488,780.33 and advised Weis that it could pay in a lump sum or in twelve quarterly installments of $43,620.25, with a final quarterly installment of $19,387.33 and with the first installment due by January 25, 2013. Weis paid two withdrawal liability installments of $43,620.25 to the Fund on January 25, 2013 and April 25, 2013.

In March 2013, Weis asked the Fund to review its withdrawal liability determination. The Fund did so and concluded that Weis had withdrawn in the plan year ending May 31, 2010, rather than the plan year ending May 31, 2013, as the Fund had originally thought. Thus, the Fund sent Weis a letter dated August 9, 2013 ("Revised Notice and Demand") with a revised withdrawal liability determination. The Revised Notice and Demand stated that due to the adjusted date of Weis' withdrawal, Weis owed a total of $619,209 in withdrawal liability. The Revised Notice and Demand also advised Weis that it could pay this amount by making a series of quarterly installments of $85,780 plus a final installment of $39,456. In addition, it notified Weis that its third withdrawal liability installment would be due on August 25, 2013, as opposed to the previously scheduled due date of July 25, 2013.

The Revised Notice and Demand instructed Weis that, by August 25, 2013, it was required to remit a total payment of $170,099.50. This amount was comprised of the revised installment payments plus the difference between the two $43,620.25 installments that Weis previously remitted and the revised installment amount of $85,780. The Revised Notice and Demand contained the following payment schedule:

| Due Date | Payment Amount |
|---|---|
| 8/25/13 | $170,099.50 (representing the unremitted differences in the three installments due 1/25 - 7/25/2013) |
| 10/25/13 | $85,780 |
| 1/25/14 | $85,780 |
| 4/25/14 | $85,780 |
| 7/25/14 | $85,780 |
| 10/25/14 | $39,456 |

(Dkt. 30-1, Revised Notice and Demand, at 2.) To date, the only withdrawal liability payments that Weis has made are the two installments of $43,620.25 submitted in January 2013 and April 2013.

## II. LEGAL STANDARD

Summary judgment is appropriate when the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009). The court must construe all facts and make all reasonable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is appropriate when the nonmoving party cannot establish an essential element of its case on which it will bear the burden of proof at trial. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012).

## III. ANALYSIS

The Fund asks the court to grant its motion for summary judgment and award damages as follows: (1) the unpaid withdrawal liability it believes Weis owes; (2) liquidated damages in the amount of 20% for each unremitted past due installment; (3) interest as detailed in the Fund's withdrawal liability procedures (Dkt. 30-1, Ex. 1); and (4) attorney's fees and costs related to its efforts to collect the delinquent payments. Weis disputes that it owes the Funds any money. An

arbitration proceeding is pending regarding this issue, where Weis presumably hopes to obtain a ruling that the Fund must repay the two installments Weis made pursuant to the first payment schedule.

Despite the pending arbitration proceedings, "withdrawal liability is ordinarily payable during the pendency of the arbitration." *Cent. States Se. and Sw. Areas Pension Fund v. O'Neill Bros. Transfer & Storage Co.*, 620 F.3d 766, 772 (7th Cir. 2010). As the Seventh Circuit has explained:

> The statutory language requires that the employer pay even while challenging the plan's determination; if the employer prevails on its challenge, it will get its money back. Two statutory provisions speak to this procedure, sometimes referred to as "pay now, dispute later." Subsection 1399(c)(2), the provision of the statute that discusses payment, states that:
>
>> Withdrawal liability shall be payable in accordance with the schedule set forth ... notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule.
>
> 29 U.S.C. § 1399(c)(2). Similarly, § 1401(d), which relates specifically to arbitration, states that:
>
>> Payments shall be made by an employer in accordance with the determinations made under this part until the arbitrator issues a final decision . . . .

*Id.*[1]

Weis does not dispute that it is obligated to make interim installment payments pursuant to the "pay now, dispute later" rule. Instead, it challenges the Fund's decision to change the

---

[1] Portions of the parties' briefs include citations to ERISA, as opposed to the United States Code. Section 4219 of ERISA, which is prominently featured in Weis' response to the motion for summary judgment, is the same as 29 U.S.C. § 1399. In the interests of consistency, the court will cite to the United States Code.

installment payment schedule after it made the first two payments pursuant to the original schedule.

**A.     Increased Payment Amount**

First, Weis is dissatisfied with the increased payments, which went from $43,620.25 to $85,780.00 per installment. Weis has not pointed to any authority suggesting that a prospective increase in the amount of installment payments is outside the ambit of the "pay now, dispute later" rule, which "make[s] clear that payment must begin immediately and is not suspended during [a] challenge" to the payments via arbitration. *See id.*

Moreover, 29 U.S.C. § 1399(b)(2)(B) specifically contemplates changes in the amount of liability that post-date the initial assessment of liability. That section provides that "[a]fter a reasonable review of any matter raised, the plan sponsor shall notify the employer of – (i) the plan sponsor's decision, (ii) the basis for the decision, and (iii) the reason for any change in the determination of the employer's liability or schedule of liability payments." Thus, the Fund was authorized to reassess the amount of liability. *See Nat'l Shopmen Pension Fund v. DISA Indus., Inc.*, 653 F.3d 573, 580 (7th Cir. 2011) (holding that "a fund must be able to revise an assessment of withdrawal liability, within a reasonable period of time, if it discovers that it has undercharged an employer"). Thus, Weis' challenge to the fact that the Fund revisited its determination regarding withdrawal liability and increased the amount of each installment payment is unavailing.

**B.     The Allegedly Retroactive Nature of the New Installment Plan**

Next, approaching the increase from a different angle, Weis contends that the Fund may not retroactively change the amount of the first two installment payments by increasing the

amount due and then "falsely accus[ing Weis] of being in breach of the payment schedule when it refused to pay a retroactive installment increase." (Dkt. 33, Def. Resp., at 2.) According to Weis, even if the increase in the installment payments is permissible, it may only be prospective (*i.e.*, the increase must post-date the Revised Notice and Demand, as opposed to applying to already-made payments that pre-date the Revised Notice and Demand). In support, Weis directs the court's attention to 29 U.S.C. § 1399(c)(2), which provides that "[w]ithdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor under subsection (b)(1) of this section beginning no later than 60 days after the date of the demand notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule."[2] According to Weis, this section does not address changes in the amount of liability assessed by the Fund and thus precludes the Fund from changing the amount of liability.

The problem with this argument is that, as noted above, the Fund may change its "determination of the employer's liability or schedule of liability payments." 29 U.S.C. § 1399(b)(2)(B); *Nat'l Shopmen*, 653 F.3d at 580. Thus, it is clear that the Fund may correct its calculations if it believes it made an error. If Weis disagrees with those revised calculations, it must pay and challenge the new calculations in arbitration under the "pay now, dispute later" rule. *See Nat'l Shopmen*, 653 F.3d at 580.

Weis disagrees, asserting that the Fund impermissibly required it to make a "catch up" payment (comprised of the difference between the newly assessed corrected payment amount

---

[2] Subsection (b)(1) provides that "[a]s soon as practicable after an employer's complete or partial withdrawal, the plan sponsor shall – (A) notify the employer of – (i) the amount of the liability, and (ii) the schedule for liability payments, and (B) demand payment in accordance with the schedule." 29 U.S.C. § 1399(b)(1).

minus the already-made lower payment amount) at the beginning of the schedule of the newly-calculated installment payments.  The Fund defends the catch-up payment, pointing to the payment calculation methodology in § 1399(c).  *See O'Neill*, 620 F.3d at 768 (ERISA's installment payment "mechanism calculates the amount of liability to equal the employer's proportionate share of the plan's unfunded vested benefits; the amount of each annual payment is roughly equal to the withdrawing employer's typical past contributions").  According to the Fund, it was entitled to revise the payment schedule to bring Weis into compliance as quickly as possible following its reassessment of Weis' withdrawal liability.

Weis points to § 1399(c)(1)(C)(i), which provides that:

Except as provided in subparagraph (E) [which addresses partial withdrawals], the amount of each annual payment shall be the product of –

> (I) the average annual number of contribution base units for the period of 3 consecutive plan years, during the period of 10 consecutive plan years ending before the plan year in which the withdrawal occurs, in which the number of contribution base units for which the employer had an obligation to contribute under the plan is the highest, and
>
> (II) the highest contribution rate at which the employer had an obligation to contribute under the plan during the 10 plan years ending with the plan year in which the withdrawal occurs . . . .

29 U.S.C. § 1399(c)(1)(C)(I).

Section 1399(c) further provides that:

(2) Withdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor under subsection (b)(1) of this section beginning no later than 60 days after the date of the demand notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule.

(3) Each annual payment determined under paragraph (1)(C) shall be payable in 4 equal installments due quarterly, or at other intervals specified by plan rules. If a

> payment is not made when due, interest on the payment shall accrue from the due date until the date on which the payment is made.

29 U.S.C. § 1399(2) & (3). These sections do not specifically authorize a catch-up payment like the one at issue in this case. They do, however, suggest that as a general rule, installment payments should be equal.

The court finds that the present dispute about the catch-up payment is ultimately one of semantics. Weis characterizes the catch-up payment as improperly retrospective. In a sense, it is, because it requires Weis to pay more in connection with the two already paid installments that the Fund now believes were inadequate. However, the payments themselves are prospective, as the first payment under the revised schedule was due two weeks after the notice of the revised payment schedule and eight weeks after the Fund made its original demand for withdrawal liability. *See* 29 U.S.C. § 1399(c)(2) ("Withdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor . . . beginning no later than 60 days after the date of the demand notwithstanding any request for review").

Thus, in the end, Weis' arguments boil down to its disagreement with the Fund's calculation of its withdrawal liability and the payment schedule imposed by the Fund. However, "[a]ny dispute between an employer and a plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1). Because, as discussed above, "[w]hether the Fund has computed the withdrawal liability correctly is [a] question for the arbitrator," Weis must pay now "notwithstanding contentions that may prevail in the end." *Tr. of Chic. Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. Ctr. Transp., Inc.*, 935 F.2d 114, 118 (7th Cir. 1991).

This is the case even when a plan issues a corrected payment plan that the employer disputes since "a plan is entitled to correct what it believes to be errors in the calculation of withdrawal liability and revise an assessment as long as the employer is not prejudiced." *See National Shopmen*, 653 F.3d at 580. An increase in the installment amount that an employer challenges is not enough to show prejudice because the employer may challenge the increase in arbitration. *Id*. As the Seventh Circuit has explained, when a plan decides its initial assessment of liability was too low, "the employer is stuck with the higher bill in the interim, and that may be a cost it would rather not bear. But as we have explained, there are good reasons for the MPPAA's 'pay now, fight later' rule, and Congress has decided to assign that cost to the withdrawing employer." *Id*.

Thus, the court finds that Weis' sole argument in opposition to the Fund's motion for summary judgment – that the catch-up payment was impermissible – is unavailing as Weis must present its challenges to the revised payment plan to an arbitrator. The rest of the Fund's motion for summary judgment is undisputed. As noted by the Fund, Weis stopped making all payments once the Fund issued the revised installment plan. Weis has not presented any support for its position that the present dispute absolves it from making any payments. In any event, any such argument would fail under the "pay first, dispute later" rule. Accordingly, the Fund's motion for summary judgment as to liability is granted.

With respect to damages, the Fund states that if the court grants summary judgment in its favor, it wishes to submit affidavits and a proposed judgment order in support of its calculations. This request is granted. The parties shall confer and, by November 21, 2014, the Fund shall file a motion to prove up its damages along with supporting documentation.

## IV. Conclusion

The Fund's motion for summary judgment as to liability [29] is granted. With respect to damages, the parties shall confer and, by November 21, 2014, the Fund shall file a motion to prove up its damages along with supporting documentation. Weis may file a response by December 10, 2014, and the Funds may file a reply by December 17, 2014. The court notes that defendants Stone Systems, Inc. and Michigan Avenue Corp. were both served on March 31, 2014. They have not answered or appeared, and to date, the Fund has only pursued its claim against Weis. The Fund has indicated that it intends to "seek[] control group liability" as to these defendants but "there currently exist disputed issues of fact as to them." (Dkt. 29, Pl.'s Mot., p. 1 n.1.) This matter is set for status on November 13, 2014, at 9:30 a.m. in Courtroom 1858.

Date: October 30, 2014 /s/
Joan B. Gottschall
United States District Judge